**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York                                7:19-cv-08410

| | |
|---|---|
| Matthew Musikar, Jane Doe, individually and on behalf of all others similarly situated | |
| Plaintiffs | Class Action Complaint |
| - against - | |
| Cumberland Farms, Inc. | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      Cumberland Farms, Inc. ("defendant") manufactures, distributes, markets, labels and sells ice cream and/or novelties labeled as types of, or containing vanilla ice cream under its Farmhouse Creamery brand ("Products"), Deluxe Ice Cream ("Product Line").[1]

2.      The Products are or may be available to consumers nationwide from defendant's approximately 600 stores and directly from defendant's website.

3.      The Products are sold in 1.5 QT (1.42 L) cartons and represented as containing vanilla ice cream on the labels, in point-of-sale marketing, store display ads and print circulars and

---

[1] "Novelties" refers to products other than ice cream sold by the carton, such as ice cream sandwiches, cones, etc.

promotions, websites, television and/or radio ads.[2]

4.     The Products are represented as vanilla ice cream exclusively or as part of an ice cream combination, inclusion or variation and include the Chocolate Chip, Chocolate Chip Cookie Dough and French Vanilla Ice Cream Varieties.

I.   Ice Cream Products

5.     Ice cream is a year-round treat enjoyed by 96% of Americans.[3]

6.     Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[4]

7.     Ice cream is defined by a minimum of 10 percent milkfat, weighing no less than 4.5 pounds to the gallon and containing less than 1.4 % egg yolk solids.[5]

8.     When ice cream has 1.4% or more egg yolk solids as part of its base, it is referred to as "french ice cream."[6]

9.     According to ice cream lore, Thomas Jefferson, discovered this uniquely "French" way of incorporating egg yolks into ice cream during his time as United States Minister to France, c. 1785 and the name has stuck ever since.[7]

II.   Vanilla is Perennial Favorite Ice Cream Flavor

---

[2] According to 21 C.F.R. § 135.110(f)(6), the labeling, ingredients and flavoring requirements are identical for a type of ice cream whether it is sold as a separate single flavor, or combined with (i) other flavors such as "Neapolitan" which typically consists of vanilla, chocolate and strawberry ice creams or (ii) mixed with inclusions such as chocolate chip or caramel.

[3] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018

[4] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.

[5] 21 C.F.R. § 135.110(a)(2) ("Ice cream and frozen custard.").

[6] 21 C.F.R. § 135.110(f)(1).

[7] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013

10.     Vanilla is the consistent number one flavor for 28% of consumers, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

11.     The reasons for vanilla's staying power is "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[8]

12.     By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[9]

13.     The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge and sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[10]

III. Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

14.     In 1908, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[11]

15.     By law, vanilla refers to "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[12]

---

[8]Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[9]Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[10] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.
[11] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.
[12] 21 C.F.R. §169.3(c)

16.    The global landscape since The Pure Food and Drugs Act, enacted in 1906 to "protect consumer health and prevent commercial fraud," has changed little.[13]

17.    Daily headlines alert us to this resurgent international threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[14]

18.    While "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

19.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[15]

20.    Its value as the second most expensive flavoring ingredient after saffron has made it a constant target of those seeking to dilute, imitate, adulterate and "extend" the flavor of this delicate tropical orchid.[16]

21.    General typologies of food fraud applied to vanilla are contained below.[17]

| Type | Example |
|---|---|
| ➢ Cheating on analytical tests by containing markers specifically tested for | • Manipulation of carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to real vanilla. |

---

[13] Berenstein, 412.

[14] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

[15] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

[16] "Extend" in the context of flavoring is a modern way to say "dilute" or "adulterate" – to make what is being "extended" go farther.  Since "dilute" and "adulterate" have a deserved negative connotation, the flavor industry and technical trade literature use the euphemistic term, "extend," or sometimes "fortify."

[17] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

➢ Cheating by giving consumers the impression a food or ingredient is present in greater amounts and/or higher quality form than it actually contains

• Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla bean, when the ground beans have been exhausted of flavor, and any perceived vanilla flavor may not even be due to the presence of real vanilla .

➢ Substitution or Replacement of a food/ingredient with an alternate food/ingredient of lower quality

• Tonka beans, which are banned from entry to the United States, instead of vanilla beans;
• Coumarin, phytochemical found in Tonka beans, to increase the vanilla flavor perception.

➢ Coloring agents to produce a more attractive color

• Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla;[18]
• Annatto and turmeric in dairy products purporting to be flavored with vanilla, to darken the color to better resemble the hue of rich, yellow butter.

➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component

• Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar.

➢ Ingredient list deception[19]

• Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list – "ground vanilla beans" as containing actual vanilla flavor when they are devoid of any naturally

---

[18] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[19] A recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers instead of its actual and non-misleading name, "sugar."

|  | occurring vanilla flavor. |
| ➢ Diluting/Extending | • Combination with a variety of flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla."[20] |
|  | • "Spiking" or "fortification" of vanilla by adding natural flavors which simulate the taste of vanilla, contrary to consumer expectations and law. |

22.    The food fraud typologies as applied to vanilla in the Products include one or more of the above-described types.

IV. What Consumers Expect from Ice Cream Labeling

23.    To prevent deception of consumers, the labeling of ice cream is divided into three categories which differ based on factors including (1) the source(s) of the characterizing flavor, (2) the flavor which predominates, (3) the amount of each flavor component and (4) the percent of the total flavor component represented by a flavor component.[21]

24.    For ice cream, any flavor not derived from the characterizing flavor is considered an artificial flavor.

25.    For decades, consumers have expected vanilla ice creams to be exclusively flavored by real vanilla derived from the vanilla plant and contain a sufficient amount of vanilla to characterize the food, with vanilla flavor or vanilla extract designated on the ingredient list.[22]

---

[20] Berenstein, 423.
[21] 21 C.F.R. § 135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).
[22] 21 C.F.R. § 135.110(f)(2)(i); 21 C.F.R. § 169.175-182.

26.     If an ice cream contains no artificial flavor, a non-misleading label would be expressed in the following form:

> ["common or usual name of the characterizing flavor"] + ["ice cream"] → "Vanilla Ice cream" or "Strawberry Ice Cream."[23] ("Category 1").

27.     If an ice cream contains a natural characterizing flavor (i.e., vanilla) and an artificial flavor simulating it, and if the natural flavor predominates, a non-misleading label would be expressed in the following form:

> ["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream."[24] ("Category 2").

28.     If an ice cream contains a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates, or if only artificial flavor is used, a non-misleading label would be expressed in the following form:

> ["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream."[25] ("Category 3").

V.  The Vanilla Ice Cream or Products Containing Vanilla Ice Cream Varieties are Misleading

29.     The Products' principal display panels ("PDP") and Variety are presented below.

Front Label         Variety

Chocolate Chip

---

[23] 21 C.F.R. § 135.110(f)(2)(ii).
[24] 21 C.F.R. § 135.110(f)(2)(ii).
[25] 21 C.F.R. § 135.110(f)(2)(iii).



Chocolate Chip Cookie Dough



French Vanilla

30.    The Products are represented as containing vanilla ice cream through the identity statements or product description, presented below for the Chocolate Chip, Chocolate Chip Cookie Dough and French Vanilla Products.[26]

<u>Identity and/or Product Description</u>

Rich and creamy ==vanilla ice cream== churned with deliciously semi-sweet chocolate chips

Rich and creamy ==vanilla ice cream== mixed with semi-sweet chocolate chips and delicious chunks of cookie dough

Rich and creamy french ==vanilla ice cream==

---

[26] 21 C.F.R. § 101.3(b)(1); 21 C.F.R. § 101.3(b)(3).

31.     The consumer gets the impression that vanilla is the sole flavor source due to one or more of the items in the table below.[27]

<u>Front Label Representations Contributing to Consumer Expectation that Vanilla is Sole Flavor Source</u>

| | |
|---|---|
| • "vanilla ice cream" as part of the product description | ☒ |
| • Absence of the terms "flavored," "artificially flavored" or their variations | ☒ |
| • Scoop of ice cream which has orange and/or yellow hue | ☒ |

A.   <u>Ingredient List Reveals Products Contain Flavoring Not from Vanilla</u>

32.     The front label statements of "vanilla ice cream" are understood by consumers to identify a product where the characterizing flavor is vanilla and supplied to the Products only from the vanilla plant.

33.     The Products' vanilla ice cream is not flavored only by vanilla but contains flavors derived from not-vanilla sources, which is misleading to consumers.

34.     This is revealed through the ingredient lists indicating the Products contain "natural flavor" for the Chocolate Chip, Chocolate Chip Cookie Dough and French Vanilla Products, below.

<u>Ingredient List (Product Image)</u>                    <u>Ingredients</u>



**Ingredients:** Milk, cream, sugar, skim milk, corn syrup, whey protein concentrate, whey, buttermilk, chocolate liquor, natural flavor, cocoa butter, guar gum, mono and diglycerides, xanthan gum, soy lecithin, carrageenan, annatto extract and turmeric (for color).

---

[27] Category I.

**Ingredients:** Milk, cream, sugar, skim milk, corn syrup, wheat flour, whey protein concentrate, whey, buttermilk, butter, chocolate liquor, molasses, margarine (soybean oil, partially hydrogenated soybean oil, water, salt, soy lecithin, natural flavor, mono and diglycerides, annatto extract and turmeric [for color], Vitamin A palmitate, whey), cornstarch, <mark>natural flavor</mark>, guar gum, cocoa butter, mono and diglycerides, salt, soy lecithin, xanthan gum, carrageenan, annatto extract and turmeric (for color).



**INGREDIENTS:** MILK, CREAM, SKIM MILK, SUGAR, CORN SYRUP, EGG YOLKS, WHEY PROTEIN CONCENTRATE, WHEY, <mark>NATURAL FLAVOR</mark>, GUAR GUM, MONO AND DIGLYCERIDES, XANTHAN GUM, CARRAGEENAN, ANNATTO AND TURMERIC EXTRACT (COLOR).

35. The Products' flavor components are identical across the Products purporting to be vanilla ice cream varieties.

B. Natural Flavor is not a Synonym for Vanilla Flavor or Vanilla Extract in the Products

36. A natural flavor in the context of ice cream means a flavor that was derived from the product whose flavor is simulated – i.e., in a product which is, or contains vanilla ice cream, a natural flavor means the flavor derived from the vanilla plant.[28]

37. Defendant's listing of "natural flavor" is not another way to refer to the exclusively vanilla flavoring ingredients that consumers expect, and the law requires.

38. These exclusively vanilla ingredients – vanilla flavoring or vanilla extract – differ only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than

---

[28] Compare 21 C.F.R. § 101.22 (natural flavor) with 21 C.F.R. § 169.175 (Vanilla extract.) and § 169.177 (Vanilla flavoring.).

this amount.[29]

39.    If the Products contained either of the exclusively vanilla ingredients, there would not be a need to declare or identify "Natural Flavor" in the ingredient list.

40.    Additionally, it would be illogical to use a more expensive and higher quality ingredient (vanilla extract or vanilla flavoring) but designate it with a vague term perceived less favorably by consumers due to its opaque components, lower cost and ubiquity.

C.  Natural Flavor does not refer to the Standardized Vanilla-Vanillin Ingredients

41.    The vanilla standards reference three vanilla-vanillin combinations – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[30]

42.    The standardized vanilla ingredients – vanilla extract, vanilla flavoring, concentrated vanilla flavoring, and vanilla powder – could be understood as complying with the requirements for "natural flavor."[31]

43.    However, the "vanillin" referred to in the standardized combination ingredients is produced from non-vanilla bean materials, like wood pulp, coal tar or plant fiber.

44.    While vanillin is a main flavoring component of vanilla, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant.

45.    This type of "natural vanillin" is rarely produced, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

46.    For the purposes of ice cream flavor labeling, vanillin (from non-vanilla sources) cannot be designated as a "natural flavor" because it implies it derives from vanilla beans, whose

---

[29] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.);
[30] 21 C.F.R. § 169.180, § 169.181, § 169.182.
[31] 21 C.F.R. § 169.175 (Vanilla extract.), § 169.176 (Concentrated vanilla extract.), § 169.177 (Vanilla flavoring.), § 169.178 (Concentrated vanilla flavoring.) and § 169.179 (Vanilla powder.).

flavor it simulates.[32]

47.   This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

48.   This means if a vanilla flavor is derived from any source other than vanilla, it is accurately designated as an artificial flavor.[33]

49.   Therefore, the standardized vanilla-vanillin combination ingredients are not the ingredients used in the Products but for some reason, designated as "natural flavor."

D.   <u>"Natural Flavor" Refers to "Vanilla with Other Natural Flavors" ("Vanilla WONF")</u>

50.   A typical ingredient used when giving consumers less vanilla than they are expecting and entitled to is "Vanilla With Other Natural Flavors" or "Vanilla WONF."

51.   When adding complicated flavors to a product, a flavor supplier typically mixes various flavors together into one package, for reasons including convenience and processing.

52.   Since vanilla is the world's second most valuable flavor ingredient, flavor suppliers and the companies they work with are continually exploring new ways to increase profits at the margins, which is at the expense and to the detriment of consumers.

53.   By formulating a flavor ingredient that includes an unspecified amount of vanilla – likely less than half – and extending/diluting it with "other natural flavors," or flavors not derived from vanilla, they can plausibly call this ingredient "Vanilla With Other Natural Flavors."

54.   No standardized vanilla ingredients provide for "other natural flavors" to be added with a vanilla flavoring or vanilla extract because this would result in the spiking or fortification of the vanilla flavor.

---

[32] 21 C.F.R. § 101.22(a)(3)
[33] In contrast to the regulations at 21 C.F.R. § 101.22.

55.     On the Products' ingredient lists, "Vanilla WONF" is designated through the term "Natural Flavor."[34]

56.     In an ice cream represented as flavored only from the characterizing flavor, it is:[35]

1. deceptive and unlawful to include flavoring that is not derived from the characterizing flavor, vanilla; and

2. misleading and unlawful to simulate, reinforce and "extend" the taste of vanilla through "Natural Flavor" because consumers will:

    i.      think they received more real vanilla than they actually did;

    ii.     expect all of the vanilla flavor or taste imparted by the Products to be from vanilla beans; and

    iii.    pay more for such product.

## VI. "French" Ice Cream Does Not Permit or Refer to Modification of Vanilla Consumers Expect in Product Designated as "French Vanilla Ice Cream"

57.     The descriptor "French" or "french" preceding "vanilla" does not modify the amount of vanilla or proportion of vanilla compared to the total flavoring ingredients, consumers expect in a product labeled "French vanilla ice cream."[36]

58.     As indicated, *supra*, the term "French" indicates the ice cream base contains 1.4% or more egg yolk solids, which distinguish this ice cream variant by contributing to a:[37]

- smoother consistency and mouthfeel than typical ice cream;

---

[34] The natural flavor as part of the vanilla ice cream component is distinct from any natural flavor that may be used in the inclusions such as the chocolate chips or cookie dough.

[35] 21 C.F.R. § 135.110(f)(2)(i).

[36] 21 C.F.R. § 135.110(f)(1) ("The name of the food is 'ice cream'; except that when the egg yolk solids content of the food is in excess of that specified for ice cream by paragraph (a) of this section, the name of the food is 'frozen custard' or 'french ice cream' or 'french custard ice cream'.)

[37] Sheela Prakash, What's the Difference Between Vanilla and French Vanilla Ice Cream?, The Kitchn, June 7, 2017.

- caramelized, smoky and custard-like taste; and

- pale-yellow color.

## VII. Coloring Misleads Consumers to Expect the Products Contain More Vanilla Than They Do

59. The Products contain extracts of annatto and turmeric for coloring purposes, indicated on their ingredient lists and reproduced in the below table.

| Varieties | Ingredients |
|---|---|
| Chocolate Chip<br>Chocolate Chip Cookie Dough | "annatto extract and turmeric (for color)." |
| French Vanilla | "ANNATTO AND TURMERIC EXTRACT (COLOR)" |

60. Annatto and turmeric extracts are often used in cheddar cheese to provide a rich yellow-orange shade evocative of milkfat associated with butter, produced by dairy cattle in the United States.

61. No allegation is made with respect to how annatto and turmeric are declared or about their use, which is specifically permitted by regulation.[38]

62. The added coloring provided to the Products by annatto and turmeric modifies the color of the vanilla ice creams to a color closer to a vanilla ice cream flavored exclusively by flavor from the vanilla plant.

63. The result is a darker color as indicated below, which is similar in appearance to color of the ice cream scoops on the front labels.

---

[38] 21 C.F.R. § 101.22(k)(3)



64.    The darker color makes the consumer (1) less likely to question or be skeptical of the amount and type of vanilla in the Products, (2) expect the Products to be similar to other, accurately labeled vanilla ice creams and (3) expect the Products contain more vanilla than they actually do.

VIII.    Products are Misleading Because They are Labeled and Named Similar to Other Products

65.    Competitor brands to defendant's are labeled as or containing vanilla ice cream and are not misleading because they do not contain non-vanilla flavoring.

Competitor Product[39]                                    Product




---

[39] Publix Premium Ice Cream, French Vanilla 0.5 GL (1.89 LT), accessed September 10, 2019.

Ice Cream Made with Egg Yolks, Pure Vanilla Extract and Ground Vanilla Beans

Rich and Creamy french vanilla ice cream

66.     The ingredients in the Competitor Product and Product are presented below.

Ingredients

Competitor Product

Milk, Cream, Sugar, Corn Syrup, Stabilizer (Carob Bean Gum, Guar Gum), Pasteurized Egg Yolks, Color (Annatto And Turmeric), Pure Vanilla Extract And Ground Vanilla Beans.

Milk, Cream, Sugar, Corn Syrup, Stabilizer (Carob Bean Gum, Guar Gum), Pasteurized Egg Yolks, Color (Annatto And Turmeric), ==Pure Vanilla Extract== And Ground Vanilla Beans.

Product

INGREDIENTS: MILK, CREAM, SKIM MILK, SUGAR, CORN SYRUP, EGG YOLKS, WHEY PROTEIN CONCENTRATE, WHEY, NATURAL FLAVOR, GUAR GUM, MONO AND DIGLYCERIDES, XANTHAN GUM, CARRAGEENAN, ANNATTO AND TURMERIC EXTRACT (COLOR).

**INGREDIENTS:** MILK, CREAM, SKIM MILK, SUGAR, CORN SYRUP, EGG YOLKS, WHEY PROTEIN CONCENTRATE, WHEY, ==NATURAL FLAVOR==, GUAR GUM, MONO AND DIGLYCERIDES, XANTHAN GUM, CARRAGEENAN, ANNATTO AND TURMERIC EXTRACT (COLOR).

67.     The competitor product lists "Pure Vanilla Extract" on its ingredient list and does not indicate the presence of other flavors not derived from vanilla, such as "Natural Flavor," as listed in defendant's Products.

68.     Where two similarly labeled products are represented similarly as to quality and/or fill, yet one product contains a greater amount and/or proportion of the characterizing flavor components, relative to the total flavor component, consumers will be deceived and pay more money for the latter product under the false impression that it contains the equivalent amount of said ingredients or components.

IX. Conclusion

69.   The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

70.   Had Plaintiff and Class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

71.   The Products contain other representations which are misleading and deceptive.

72.   As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $8.79, per 1.5 quart (1.42L) (across the Products), excluding tax – compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

73.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

74.   Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

75.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

76.   Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

77.   A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

78.   Named Plaintiff is a citizen of Rockland County, New York.

79.   Jane Doe plaintiffs are citizens of the 49 states for which the identity of a named

plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs.

80.     The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

81.     Defendant is a Delaware corporation with a principal place of business in Westborough, Massachusetts (Worcester County).

82.     During the class period, Named and Jane Doe Plaintiffs purchased one or more of the Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

83.     Named and Jane Doe Plaintiffs purchased the Products based upon the representations on the packaging.

84.     Named and Jane Doe Plaintiffs would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

85.     The classes will consist of all consumers in all 50 states with sub-classes for the individual states.

86.     The present complaint contains Named Plaintiffs from: New York, who will represent his/her/their state sub-classes of persons who purchased any Products containing the actionable representations during the statutes of limitation.

87.     Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Named and Jane Doe Plaintiffs and class members are entitled to damages.

88.     Named and Jane Doe Plaintiffs' claims and the basis for relief are typical to other members because all were subjected to the same representations.

89.    Named Plaintiffs are adequate representatives because their interests do not conflict with other members.

90.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

91.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

92.    Named and Jane Doe Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

93.    Named and Jane Doe Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350<br>and Consumer Protection Statutes of Other States and Territories</u>

94.    Named and Jane Doe Plaintiffs assert causes of action under the consumer protection statutes of the all 50 states, with Named Plaintiff asserting the consumer protection laws of his or her individual state.

a.  Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b.  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c.  Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 *et. seq.*;
d.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
e.  California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
f.  Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
g.  Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
h.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
i.  District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
j.  Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;
k.  Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
l.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
m. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;
n.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;
o.  Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 *et. seq.*;

p.  Iowa Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 *et seq.*;

q.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

r.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

s.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

t.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

u.  Maryland Consumer Protection Act, Md. Code, Com. Law § 13-101 *et seq.*;

v.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws Ch. 93A;

w.  Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

x.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et. seq.*;

y.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

z.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

aa. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

bb. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

cc. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

dd. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

ee. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

ff. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

gg. New York General Business Law ("GBL") §§ 349 & 350;

hh. North Carolina General Statutes Chapter 75: Monopolies, Trusts and Consumer Protection, N.C. Gen. Stat. §§ 75-1.1 through 75-35;

ii. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

jj. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

kk. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

ll. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

mm. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 *et seq.*;

nn. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et seq.*;

oo. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

pp. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

qq. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

rr. Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et. seq.*;

ss. Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 *et. seq.*;

tt. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

uu. Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et. seq.*;

vv. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

ww. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101,

*et. seq.*;

xx. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*; and

yy. Wyoming Consumer Protection Act, Wyo. Stat. Ann.§§ 40-12-101 *et. seq.*;

95.     Named and Jane Doe Plaintiffs and class members assert causes of action under the consumer protection laws of their States.

96.     Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products contain more of the characterizing ingredients than they actually do and (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients.

97.     Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

98.     Named and Jane Doe Plaintiffs and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

99.     After mailing appropriate notice and demand, Named and/or Jane Doe Plaintiffs who reside in a State where notice is required prior to seeking damages under that State's Consumer Protection Statutes, will have mailed and/or have amended this complaint to request damages. Cal. Civil Code § 1782(a), (d); Mass. UDAP, Mass. Gen Laws Ch. 93A, etc.

100.   The representations and omissions were relied on by Named and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

101.   Named and Jane Doe Plaintiffs and class members incorporate by reference all preceding paragraphs.

102. Defendant   misrepresented   the   misrepresented   the   substantive,   quality, compositional, organoleptic and/or nutritional attributes of the Products through representing the

21

characterizing ingredient was present in greater amount than it actually was.

103.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

104.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge in the production, service and/or sale of the product type, given that defendant is a dairy cooperative and deals exclusively in products based on milk.

105.   The representations took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector for this type of product.

106.   Named and Jane Doe Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

107.   Named and Jane Doe Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

108.   Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

109.   Defendant manufactures and sells products which contain a characterizing ingredient or flavor which is desired by consumers.

110.   The Products warranted to Named and Jane Doe Plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

111.   Defendant's front labels informed Named and Jane Doe Plaintiffs the Products contained flavoring exclusively from vanilla, when this was not accurate.

112.   Defendant had a duty to disclose and/or provide a non-deceptive description of the Products' ingredients and knew or should have known same were false or misleading.

113.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector

114.   The Products warranted to Named and Jane Doe Plaintiffs and class members that the characterizing ingredients, emphasized by the Products' name, description, label and/or website and marketing, was (1) present in an amount sufficient to characterize the Products and (2) the exclusive source of flavor in the Products.

115.   Named and Jane Doe Plaintiffs provided or will provide notice to defendant and/or its agents, representatives or retailers.

116.   The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions and were not merchantable.

117.   Named and Jane Doe Plaintiffs and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

118.   Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

119.   Defendant's purpose was to sell a product which contained a valuable and desired characterizing ingredient or flavor, and represent the Products were exclusively or predominantly flavored from that ingredient and contained sufficient independent amounts of same such that they would accurately be described by the product name ascribed to them.

120.   The Products were not flavored exclusively from the characterizing ingredient.

121.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on their front labels when it was in a position to disclose this but did not accurately

describe the nature of the Products.

122.  Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with this characterizing ingredient for the above-described reasons.

123.  Named and Jane Doe Plaintiffs and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

124.  Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

125.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Named and Jane Doe Plaintiffs demand a jury trial on all issues.

**WHEREFORE,** Named and Jane Doe Plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying named plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and

experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   September 10, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:19-cv-08410
United States District Court
Southern District of New York

Matthew Musikar, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

Cumberland Farms, Inc.

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  September 10, 2019

/s/ Spencer Sheehan
Spencer Sheehan